**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIANE SANDEFUR,** | **Case No. 2:20-cv-03329-JDW** |
| *Plaintiff*, | |
| v. | |
| **UNIVERSITY OF PENNSYLVANIA,** | |
| *Defendant*. | |

## MEMORANDUM

The University of Pennsylvania fired Diane Sandefur after years of disciplinary actions. She can't believe that her own behavior led to her termination, though. So she has sued Penn on the assumption that Penn discriminated against her. She had a chance to gather the evidence she needed but elected to do almost nothing during discovery in this case. And now, she finds herself where she started: with assumptions, not evidence. But assumptions aren't enough to get a jury trial. Ms. Sandefur's lack of evidence means that the Court will grant Penn's summary judgment motion.

## I. BACKGROUND

### A. Ms. Sandefur's Employment At Penn

At the time of her termination, Ms. Sandefur was a Director at Penn's Veterans Upward Bound ("VUB") program. She is a White woman and was 64

when Penn terminated her. As program director, she reported to Will Gipson and managed about sixteen to eighteen other VUB employees.

Penn identified issues with Ms. Sandefur's performance beginning in 2016. Many of them stemmed from her management of Tyrone Williams, a VUB administrative assistant and a veteran with behavioral and anger issues. In June 2016, she recommended Mr. Williams for a salary increase. After an unrelated incident with him, she reversed her recommendation. A Penn employee asked Ms. Sandefur about the reversal and noted that it seemed "very retaliatory" given the reversal happened the same day as the incident. (ECF No. 27-6.) About a week later, Ms. Sandefur reprimanded Mr. Williams via email, copying Mr. Gipson and another Penn employee, asking Mr. Williams a series of "accusatory" questions without requesting his thoughts or feedback. (ECF No. 30-1 ¶ 7.)

On July 27, 2017, Mr. Gipson asked Ms. Sandefur to meet to discuss a separate "disrespectful" email and her failure to meet a project deadline. (ECF No. 27-8 at 4.) He requested that they meet that day in person rather than speaking via email. (ECF No. 27-8 at 4.)  Ms. Sandefur refused to meet with him that day and sent him a number of email responses instead. She contends that Mr. Gipson knew she was busy that day.

Soon after Mr. Gipson's meeting request, Penn issued Ms. Sandefur a Written Warning. The Written Warning stated that her "refusal to meet" with Mr. Gipson was "insubordinate and unacceptable," and the "tone" of her emails had "shown very little respect" for Mr. Gipson. (ECF No. 27-9.) It also pointed to staff

management issues and set out several expectations for her future performance, including that she not "harass or demean" staff in any way, that she "have a written agenda" when meeting with Mr. Williams, and that she "not text [Mr. Williams] on his personal phone." (*Id.*)

On March 24, 2018, a former VUB employee, Catherine Revak visited the VUB office. Ms. Sandefur emailed Ms. Revak and said she needed to "wait outside or meet elsewhere" because her presence made "people uncomfortable," even though Ms. Sandefur did not have the authority to bar people from the office. (ECF No. 27-10.) That same day, Ms. Sandefur sent another set of emails to Paul Volz, a part-time office assistant, where she discussed Mr. Williams and Ms. Revak. Ms. Sandefur called Ms. Revak "highly manipulative" and agreed Mr. Williams needed an anger management class. (ECF No. 27-13.) Ms. Sandefur acknowledges this exchange was "inappropriate." (ECF No. 27-4 at 185:19-24, 186:5-10.)

On April 2, 2018 Penn placed Ms. Sandefur on probation because she failed to "create an environment of respect" and meet with [Mr. Williams] to discuss behaviors [she found] inappropriate." (ECF No. 27-14.) In addition, she sent "inappropriate and unprofessional" emails to Ms. Revak and Mr. Gipson. Her Probation Warning Letter requested that she "show respect in all written and verbal communication" and not "harass or demean" anyone. (*Id.*) It also asked that she "improve communication between [herself] and [her] staff, especially Mr. Williams." (*Id.*)

On April 15, 2019, Penn terminated Ms. Sandefur. It explained that her work performance had not improved since the start of her probation. (*Id.*) In her termination letter, Penn states that she failed to "improve . . . communication" with and "effectively manage" Mr. Williams and to follow Mr. Gipson's instructions. (*Id.*) Penn terminated Mr. Williams the same day. It did not terminate other directors. After Ms. Sandefur's termination, Penn hired two younger White men to fill her role (though it is unclear from Ms. Sandefur's statement of facts whether those two men were her immediate successors or hired some time later). The parties did not provide those men's exact ages.

### B.   Retirement Discussions And The Alleged Discrimination

A few discussions regarding retirement occurred during Ms. Sandefur's time at Penn. Prior to her performance issues, on an unspecified date, Ms. Sandefur told Mr. Gipson that she planned to retire in 2023, when she was 67 years old. In 2018, a Penn employee named Jeanne O'Connor overheard Carole Henderson, a Director of Finance and Grant Admission, tell others, "[W]hat we need to do now is get Diane to retire" and "we'll get Diane to retire." (*Id.* ¶ 26; ECF No. 27-17.) Ms. Henderson was not Ms. Sandefur's supervisor, but allegedly had influence over Ms. Sandefur's termination process.

Ms. Sandefur also alleges that Mr. Gipson, who is Black, treated her worse than other employees. She claims that Mr. Gipson informed her "through his actions" that she did not fit into the culture of VUB. (ECF No. 30-1 ¶ 25a.) He "did not try to work with others to make them look bad" and appears to have had a

stronger personal relationship with other employees, giving them "hugs when he saw them." (*Id.* ¶ 32.) Ralph DeLucia, a Penn Affirmative Action employee, told Ms. Sandefur that Mr. Gipson and other employees were "part of a social group of . . . administrators who referred to themselves as 'La Familia,'" who were all Black and defined by "power." (*Id.* ¶ 29a.) Mr. DeLucia stated that he (Mr. DeLucia) could not be part of this self-identified group because he "did not have the right skin pigment." (*Id.* ¶ 29b.)

Ms. Sandefur contends she made several complaints to Penn, but the date and substance of her complaints is unclear. She did not mention race, age, or gender discrimination when making her complaints.

### C.    Procedural History

On January 9, 2020, Ms. Sandefur dual-filed an administrative charge with the EEOC and PHRC, alleging age, race, and gender discrimination. On July 7, 2020, Ms. Sandefur filed this action, asserting claims for race and gender discrimination in violation of Title VII and the Pennsylvania Human Relations Act (Counts I and IV), age discrimination in violation of the ADEA (Count II), unlawful termination in violation of ERISA (Count III), and retaliation under the PHRA (Count IV). The Court dismissed her claim of unlawful termination under ERISA on March 23, 2021. After discovery, Penn moved for summary judgment on each of Ms. Sandefur's remaining claims. The Motion is now ripe for disposition.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323. A plaintiff may not rely on evidence to overcome summary judgment that would not be admissible at trial. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

III.   **DISCUSSION**

Because Ms. Sandefur has not alleged any direct evidence of discrimination, the Court analyzes all of her claims under the familiar three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, she must establish a *prima facie* case of discrimination. *See Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 n. 11 (3d Cir. 2004). Then, the employer has a burden of production (but not persuasion) to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *See id.* If the employer articulates a legitimate reason, the employee must proffer evidence to allow a reasonable factfinder to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*). Ms. Sandefur has neither established a prima facie case of discrimination, nor provided any evidence indicating her termination was pretextual.

A.   ***Prima Facie* Case**

To establish a *prima facie* case of discrimination, the claimant must demonstrate, by a preponderance of the evidence, that (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999) (race); *Jones v. Se.*

*Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (gender). For age discrimination, the final element requires the claimant show she was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

Penn does not dispute the first three elements. As to the fourth, Ms. Sandefur cannot raise an inference of discrimination and therefore cannot establish a *prima facie* case of race, gender, or age discrimination.

### 1.    Comparator evidence

"[T]he identification of a similarly-situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably, may give rise to an inference of unlawful discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). To be proper comparators, these other employees must have been "similarly[] situated in all respects." *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (quote omitted). Employees are similarly situated in all respects when they held the same job or responsibilities, shared the same supervisor or had the same decision-maker involved in a decision about their employment, have comparable violation histories, and engaged in "nearly identical" conduct. *Doe v. Apria Healthcare Group, Inc.*, 97 F. Supp. 3d 638, 645 (E.D. Pa. 2015) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009)).

Ms. Sandefur broadly bases her race discrimination claim on Penn's treatment of "other directors in her division and department," who she identifies as comparators. (ECF No. 31-1 at 9.) She explains that these comparator directors were "all of races different than hers, [and] were not terminated." (*Id.*) Similarly, Ms. Sandefur bases her gender discrimination claim on the fact that Penn replaced her with men and "treated her less favorably than the men who replaced her in the job." (*Id.* at 8.) The Court rejects Ms. Sandefur's comparator evidence. She offers no evidence she and these other "directors" or "men" were similarly situated. She provides no information about their responsibilities, past conduct, or how Penn treated them. Penn has an obligation to respond similarly when it has concerns about a director's communication and managerial style. Ms. Sandefur has no evidence it failed that obligation.

### 2.    Other evidence to raise an inference of discrimination

#### a.    Age

Ms. Sandefur argues that she satisfies a *prima facie* case for age discrimination because Penn replaced her with two younger individuals. But she has not provided their exact age, so the Court cannot conclude that the age difference was meaningful. For example, an age difference of one month would not be enough to set forth a *prima facie* case. It was Ms. Sandefur's burden to present enough evidence for the Court to conclude that the age difference gives rise to an inference of discrimination. She also has not provided other evidence that these younger individuals were "similarly situated" and "treated more

9

favorably." *See UPMC Children's Hosp. of Pittsburgh*, 808 F.3d at 645. The absence of proof means that the Court has no basis from which to conclude that her replacements raise an inference of discrimination.

Ms. Henderson's comments about getting Ms. Sandefur to retire do not help Ms. Sandefur for two reasons. First, the statements were facially neutral. It is entirely possible Ms. Henderson wanted Ms. Sandefur to retire for any number of other reasons, including her repeated disciplinary issues. Ms. Sandefur would therefore have to present some evidence that they were tied to her age. *See Jones v. E. Airlines*, LLC, No. CV 20-1927, 2021 WL 2456650, at *8 (E.D. Pa. June 16, 2021) (requiring evidence to tie facially neutral comments to protected class for a stray comment to weigh in favor of discrimination); *see also Thomas v. New York City Dep't of Educ.*, No. 10-CV-0464(EK)(CLP), 2021 WL 2646350, at *6 (E.D.N.Y. June 28, 2021) ("when are you going to retire?" did not raise an inference of discrimination). Ms. Sandefur does not satisfy that standard, as she has no evidence tying the comments to her age, as opposed to other issues. The summary judgment standard does not require the Court to assume a comment about retirement evidences age discrimination just because Ms. Sandefur thinks it does, and the Court will not make such an assumption.

Second, Ms. Sandefur cannot establish a causal link between Ms. Henderson's comments and her termination. Ms. Henderson did not terminate Ms. Sandefur; Mr. Gipson did. Stray remarks by non-decisionmakers are less likely to support a finding of discrimination than those by decision makers. *See Walden v.*

*Georgia-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997); *Rand v. Mannesmann Rexroth Corp.*, No. CIV.A. 01-3564, 2002 WL 550396, at *5 (E.D. Pa. Apr. 15, 2002) ("Stray remarks by non-decisionmakers . . . are rarely given great weight, particularly if they were made temporally remote from the date of decision." (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir.1992))). Ms. Sandefur alleges Ms. Henderson could have "influenced" her termination, but she has produced nothing to support that theory. Because Ms. Sandefur cannot show that her termination occurred under circumstances giving rise to an inference of discrimination, she cannot show make out a *prima facie* case of age discrimination.

### b.  Race and gender

With respect to her race and gender claims, Ms. Sandefur contends that Mr. Gipson treated her differently than Black colleagues because Mr. Gipson"[gave] them hugs" and "did not try to work with others to make them look bad." (ECF No. 30-1 ¶ 32.) As evidence, she says Mr. DeLucia told her Mr. Gipson and other Black employees call themselves "La Familia," and Mr. DeLucia could not be part of this self-identified group because he "did not have the right skin pigment." (*Id.* ¶¶ 29a, 29b.)

Mr. Gipson's alleged closer personal relationship with certain employees says nothing about whether he fired Ms. Sandefur because she is White. Ms. Sandefur must present "actual evidence" to the Court to raise a genuine issue of material fact that Mr. Gipson treated other employees better because they were

Black. *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Her speculation that he did not work to make others look bad, without some evidence to support it, is not enough. *See Peterson v. Sec'y United States Dep't of Veterans Affairs*, 857 F. App'x 88, 91–92 (3d Cir. 2021).

As to Mr. DeLucia's description of Mr. Gipson and other Black employees, Ms. Sandefur has not explained why Mr. DeLucia's description is anything other than inadmissible hearsay, on which she may not rely. *See* Fed. R. Civ. P. 56(c). And in fact, Ms. Sandefur's own deposition testimony weighs against crediting his assertion at all, as she explained at her deposition that she never heard anyone other than Mr. DeLucia use the phrase "La Familia." (ECF No. 27-4 at 80:1-4; 81:2-11.) But even if the Court considers Mr. DeLucia's statement undisputed for purposes of this Motion, it still does not get Ms. Sandefur what she needs. Neither Mr. DeLucia nor Ms. Sandefur describes a single instance where a member of this alleged group directed a comment or action at them, nor does either of them explain how or when these individuals discriminated against either of them based on their race. Mr. DeLucia's characterization of his colleagues, with no evidence to support it, does not create a genuine dispute of material fact.

To get around this lack of evidence, Ms. Sandefur seems to insinuate that the Court should doubt Mr. Gipson's motives because he and several of his colleagues are Black, while she is White. But as the Court has emphasized, "[a]rguments suggesting that people act in a certain way based on their membership in a protected class are not welcome in the judicial system. Attorneys

should not make them, and the Court will not consider them." *Jazayeri v. Avaya, Inc.*, No. 2:19-CV-06003-JDW, 2021 WL 2186367, at *6 (E.D. Pa. May 28, 2021).

In all, Ms. Sandefur points to not a single comment or action directed at, about, or related to her indicating Mr. Gipson terminated her because of her race. Without evidence, the Court will not credit her assumption. To the extent Ms. Sandefur was also alleging these facts to support her gender discrimination claims, they are insufficient for the same reasons. Accordingly, Ms. Sandefur has not met her burden in establishing a prima facie case of race, age, or gender discrimination.

### B.      Legitimate Nondiscriminatory Reason

Penn says that it terminated Ms. Sandefur because she failed to "effectively manage" Mr. Williams and to follow her supervisor's instructions. (ECF No. 27-3.) These qualify as legitimate, non-discriminatory reasons to terminate Ms. Sandefur.

### C.      Pretext

Even if Ms. Sandefur could prove a *prima facie* case, she cannot prove pretext. To prove Penn's reasons for her termination were pretextual, Ms. Sandefur must offer evidence from which a factfinder could reasonably either disbelieve Penn's articulated reasons for termination or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). To satisfy the first prong, the "the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

13

contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (quotation omitted). Pretext is difficult to establish. *See Fuentes*, 32 F.3d at 765.

Ms. Sandefur argues the Court should disbelieve Penn's reason for termination because Penn terminated Mr. Williams the same day it terminated her. She argues the date of termination shows Mr. Gipson "kept [Mr. Williams] employed solely for the purpose of leveraging his behavioral issues against" her. (ECF No. 31-1 at 11.) But Ms. Sandefur does not point to any evidence to support this theory. Rather, the evidence shows that Penn took issue with Ms. Sandefur's behavior, from her unprofessional email etiquette, to her refusal to communicate in person with superiors and Mr. Williams, to her inability to meet goals in her disciplinary warnings. And Ms. Sandefur agrees that at least some of the behavior for which she was disciplined—talking about Mr. Williams to Mr. Volz—was unprofessional.

To show that there is a basis to disbelieve an employer's reason, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (citation omitted). It may be that Penn could have, or even should have, terminated Mr. Williams sooner and that retaining him made Ms. Sandefur's job harder. But that is not against the law. To view the timing of his

termination as a basis to disbelieve Penn's reason for termination, a factfinder would have to conclude that Penn retained an employee and manipulated his behavior from 2016 to 2019 in an elaborate ruse to terminate Ms. Sandefur for discriminatory reasons. Other than her own speculation, Ms. Sandefur offers no evidence to support her theory, and no reasonable fact-finder could do so.

The rest of Ms. Sandefur's evidence of pretext is the same evidence on which she bases her *prima facie* case: Mr. DeLucia's statements about "La Familia" and Ms. Henderson's statements about Ms. Sandefur's retirement. Those statements do not provide proof of discrimination, let alone create a factual dispute about Penn's real reason for dismissing Ms. Sandefur.

### D.    Hostile Work Environment And Retaliation

Penn makes several arguments regarding Ms. Sandefur's hostile work environment and retaliation claims in its summary judgment motion. Ms. Sandefur does not address any of these arguments in her opposition brief. She has therefore abandoned those claims, if she was ever asserting them. *See Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("[P]laintiff's failure to mention these issues in her summary judgment response constitutes abandonment of those claims."). In any event, a review of the record shows that both claims are meritless.

## IV.    CONCLUSION

Penn terminated Ms. Sandefur because she was unprofessional in her communication and interactions with superiors and subordinates. It did not

violate the law when it did so. Ms. Sandefur therefore cannot prevail on her claims. An appropriate Order follows.

BY THE COURT:

/s/ Joshua D. Wolson
**JOSHUA D. WOLSON**, J.

December 15, 2021